UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CONSTANCE AMOS,<br>SEANETTA JOHNSON,<br>CHRIS LANPHER,<br>MAGDELYNE LOOPER,<br>CRYSTAL ROSS,<br>BRIAN PETTINGILL,<br><br>            Plaintiffs,<br><br>    v.<br><br>CLASSIC DINING GROUP, LLC,<br>CLASSIC DINING KENTUCKY AVE,<br>INC.,<br>CLASSIC DINING OF DALEVILLE, LLC,<br>CLASSIC DINING OF GREENWOOD,<br>INC.,<br>CLASSIC DINING OF POST ROAD, INC.,<br>KEN KILBERGER,<br><br>            Defendants. | 1:21-cv-2491-RLY-MG<br>1:21-cv-2492-TWP-TAB<br>1:21-cv-2493-JPH-DML<br><br>No. 1:19-cv-03193-JRS-DLP |

**Order on Various Motions**

Plaintiffs Constance Amos, Seanetta Johnson, Chris Lanpher, Magdelyne Looper, Crystal Ross, and Brian Pettingill (collectively, "Plaintiffs") worked as servers at various Denny's restaurant locations in Indiana. Amos, Johnson, and Lanpher worked at the Denny's located at 4795 Kentucky Avenue in Indianapolis; Looper at the location at 15876 West Commerce Road in Daleville; Ross at 2490 North Post Road in Indianapolis; and Pettingill at 1253 South Park Boulevard in Greenwood. (Am. Compl. ¶¶ 14, 18, 22, 26, 30, 34, ECF No. 149.) Each of these locations is incorporated as a separate legal entity (collectively, they will be referred to as "Restaurant Entities"). (*Id.* at ¶ 66.) All are owned by parent company Classic Dining

1

Group, LLC ("Classic Dining Group"), which is owned by Ken Kilberger. (*Id.* at ¶¶ 67, 70.)

Plaintiffs sued Kilberger, Classic Dining Group, and the Restaurant Entities, alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, on behalf of themselves and similarly situated employees. The first iteration of this suit, however, was brought solely by Plaintiffs Amos and Johnson. It named not only the current Defendants, but also other restaurant entities corresponding to Denny's locations at which Amos and Johnson never worked. For example, not only did Amos and Johnson sue Classic Dining Kentucky Ave, Inc., since they worked at the Denny's on Kentucky Avenue, but also Classic Dining Michigan Road, Inc., Classic Dining of Lafayette, Inc., and so on. This Court dismissed the suit for lack of subject matter jurisdiction, finding that Amos and Johnson failed to plead an injury traceable to any of the defendants, but allowed them to replead their claims. (Order, ECF No. 148.) The Second Amended Complaint, operative here, added the four previously described plaintiffs and named as defendants only those restaurant entities at which at least one plaintiff worked, in addition to Classic Dining Group and Kilberger. It also refined the allegations made, asserting that Defendants violated the FLSA's minimum wage requirements in three different ways. In some respects, Plaintiffs solved the standing problem and proceeded to state a plausible minimum wage violation; in others, they did not. Accordingly, the Court grants Classic Dining Group and Kilberger's motions to dismiss for lack of subject matter jurisdiction; grants in part and denies in part the Restaurant Entities' motion to

dismiss; dismisses the remaining motions as moot; and orders the case to be severed in conformity with Article III.

## Discussion

*A. Standing*

All Defendants—the Restaurant Entities, Classic Dining Group, and Kilberger—argue that Plaintiffs' claims must be dismissed because they lack standing, both on the face of the complaint and in fact. "In every case, the plaintiff has the burden of establishing the three elements of standing: that (1) he or she has suffered an injury that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016) (cleaned up). "Under the FLSA, alleged employees' injuries are only traceable to, and redressable by, those who employed them." *Id.* (quotation marks and citation omitted). While an employee may have more than one employer under the FLSA, *see Falk v. Brennan*, 414 U.S. 190, 195 (1973), each plaintiff must have standing to sue each defendant, *see Berger*, 843 F.3d at 289 (finding plaintiffs lacked standing to sue defendant entities other than main employer because employment connection was too tenuous and injury was thus not traceable to or redressable by other defendants); *see also Brunner v. Jimmy John's, LLC*, No. 14 C 5509, 2015 WL 5086388, at *3 (N.D. Ill. Aug. 19, 2015) (quotation omitted) (dismissing claims where "some named [p]laintiffs admittedly did not work for some named [d]efendants" and therefore lacked standing, since "liability in the FLSA

3

context requires the existence of an employer-employee relationship"). Therefore, each Plaintiff must establish that each Defendant was her employer and, as a result, can be held liable for any FLSA violations.

    1. <u>Single Enterprise Theory</u>

At the outset, Plaintiffs contend that they have standing to sue all Defendants because Defendants operate as a "single enterprise" or "single employer." (Am. Compl. ¶¶ 106–21, ECF No. 149; Pls.' Resp. 7–11, ECF No. 156.) However, this argument conflates when employees are covered by the FLSA with how entities can be held liable under it.

The FLSA applies to an employee "who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . ." 29 U.S.C. § 206(a). In other words, an employee can allege that she is covered by the protections of the FLSA because she personally is "engaged in commerce or in the production of goods for commerce" (individual coverage) or because she is "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). But the enterprise coverage notion is limited to just that—coverage. It sets out when an employee is *covered* by the FLSA, not when an employer is *liable* under it. A finding that various companies comprise a single enterprise means that those companies' employees fall within the FLSA's protections; but without more, it does not extend an invitation to sue all the companies within that enterprise. *See Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986) ("[T]he enterprise analysis is

different from the analysis of who is liable under the FLSA. The finding of an enterprise is relevant only to the issue of coverage."); *Litzendorf v. Prop. Maint. Sols. LLC*, No. CV-16-00271, 2017 WL 5900830, at *4 (D. Ariz. Nov. 30, 2017) (citing *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003)) ("Once enterprise coverage is established, it is a separate question of whether the businesses are liable as joint employers . . . ."); *Chao*, 346 F.3d at 917 ("Whether two companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers . . . are technically separate issues."); *Lucas v. BMS Enters., Inc.*, No. 3:09-CV-2159, 2010 WL 2671305, at *3 n.8 (N.D. Tex. July 1, 2010) ("The FLSA concept of 'enterprise' does not abrogate the need for the plaintiff to show that he suffered injury at the hands of each individual defendant, even if the defendants are related corporations."). So, to the extent Plaintiffs argue that they have standing to sue all Defendants simply because Defendants operate as a single enterprise, that argument fails.

Indeed, Plaintiffs cannot cite a single case adopting such a theory in a similar FLSA context. *See Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 564–65 (E.D. Pa. 2011) (citing National Labor Relations Board ("NLRB") cases to discuss single-employer liability and not reaching conclusion in FLSA context); *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1129 (N.D. Ill. 2017) (stating that a primary employer must be identified before *joint-employer* liability could be analyzed and not addressing enterprise theory); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 84–85 (3d Cir. 2003) (refusing to apply the NLRB's "single employer" or "integrated enterprise"

5

test to determine when companies should be treated as a single entity under Title VII); *Naperville Ready Mix, Inc. v. NLRB*, 242 F.3d 744, 752 (7th Cir. 2001) (applying NLRB test to determine whether companies were single employer for purposes of liability under the National Labor Relations Act); *Sanchez v. Glob. Parking Mgmt., Inc.*, No. 14-cv-04611, 2015 WL 4429024, at *2–4 (N.D. Ill. July 20, 2015) (finding two entities were single employer after defendants created new corporation to take over previous business in attempt to insulate assets after FLSA litigation had begun); *NLRB v. W. Temp. Servs., Inc.*, 821 F.2d 1258, 1266 (7th Cir. 1987) (distinguishing single and joint employer theories in NLRB context). Nor do they make any attempt to distinguish the wealth of authority rejecting such a theory. *See, e.g.*, *Cornell v. CF Ctr., LLC*, 410 F. App'x 265, 267 (11th Cir. 2011) (quoting *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir. 1986)) ("The enterprise and liability analyses are distinct. 'The finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer-employee relationship.'"); *Heuberger v. Smith*, No. 3:16-CV-386, 2017 WL 3923271, at *12–15 (N.D. Ind. Sept. 7, 2017) (rejecting single enterprise theory and finding plaintiff lacked standing in nearly identical context); *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 415 (D. Md. 2013) (rejecting notion that the single enterprise theory of liability applies to FLSA cases and stating that correct inquiry is whether entities are joint employers). In short, the question of liability—and thus the corresponding question of whether Plaintiffs have standing to sue each Defendant—is distinct from whether Defendants constituted a single

enterprise. Therefore, Plaintiffs' standing depends on whether the Defendants can be deemed joint employers.

### 2. Joint Employer Theory

While the Department of Labor's joint-employment regulations provide a framework for understanding multifaceted employment relationships, the "touchstone for joint employment is ultimately control, evaluated based on economic reality." *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns. Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008) (applying FLSA standard for joint employer to claim under the Family and Medical Leave Act). In *Moldenhauer*, the Seventh Circuit noted that factors such as whether the alleged employer had the power to hire and fire employees, supervised and controlled employee work schedules or conditions of payments, determined the rate and method of payment, and maintained employment records are some relevant considerations in assessing the amount of control an employer exercised over an employee. *Id.* But it noted that these factors are not exclusive and, at bottom, "for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case." *Id.* (citation omitted). Therefore, to have standing against each Defendant, Plaintiffs must allege facts to plausibly suggest that "each alleged employer . . . exercise[d] control over the working conditions" of each Plaintiff. And to survive Defendants' factual, as opposed to merely facial, challenges to standing, Plaintiffs must do more than allege facts—they must support those allegations with competent proof. *See Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). The Court will analyze the Defendants in turn.

7

a. Restaurant Entities

Each Plaintiff pleads that she was employed by the legal entity that corresponds to the restaurant location at which she worked. (Am. Compl. ¶¶ 14, 18, 22, 26, 30, 34, 44, 49, 54, 59, ECF No. 149.)  For example, Plaintiff Amos identifies as her employer Classic Dining Kentucky Avenue, Inc., since she worked at the Denny's on Kentucky Avenue.  (*Id.* at ¶¶ 14, 44.)  She also alleges that Classic Dining Kentucky Avenue (and Kilberger, who will be addressed later) hired her, determined her rate of pay, set her work schedule, trained her, set and controlled her conditions of employment, and maintained her time and compensation records, thereby qualifying as her employer.  (*Id.* at ¶¶ 15–16.)  And the Restaurant Entities do not appear to contest these allegations; rather, they argue that each Plaintiff lacks standing to sue the Restaurant Entities at which she did not work.  (Rest. Entities' Mem. 7–8, ECF No. 151.)  Continuing with the example of Plaintiff Amos, the Restaurant Entities argue that she lacks standing to sue the three other Defendant Restaurant Entities (Classic Dining of Daleville, LLC; Classic Dining of Greenwood, Inc.; and Classic Dining Post Road, Inc.) because she does not allege that they were her employer.  The Court agrees.

Each Plaintiff admits that she was directly employed only by the Restaurant Entity at which she worked.  When describing the conduct that forms the basis for the alleged wage violations, Plaintiff Amos referred to her work "for Defendants Classic Dining Kentucky Ave, Inc.; Classic Dining Group, LLC; and/or Ken Kilberger"; she makes no mention of work performed for any other Restaurant

Entities. (Am. Compl. ¶¶ 131, 141, ECF No. 149.) The same pattern is true for the other Plaintiffs. Since each Plaintiff admits that she was directly employed only by the Restaurant Entity at which she worked, Plaintiffs will have standing to sue the other Restaurant Entities only if they can demonstrate that the other Restaurant Entities were joint employers.

However, Plaintiffs have not made such a showing. They have not alleged that each Restaurant Entity exercised control over the working conditions of employees at other locations. They do not allege, for example, that the Denny's on Kentucky Avenue had the authority to hire and fire, control work schedules, determine the rate of payment, or maintain employment records for the Plaintiffs who worked at the Denny's on Post Road. In fact, Plaintiffs allege the opposite: each alleges that her restaurant location and Kilberger "unilaterally" determined her rate of pay, set her work schedule, trained her, set and controlled her conditions of employment, and maintained her time and compensation records. (*Id.* at ¶¶ 16, 20, 24, 28, 32, 36–37.) While these allegations suggest that the Restaurant Entities were employers of each of the Plaintiffs who worked for their respective restaurant, they do not support the inference that the other Restaurant Entities were joint employers.

Plaintiffs' remaining allegations largely revolve around the idea that the Restaurant Entities have things in common. Plaintiffs aver that the Entities have a common business model, share the same principal office address and trade name, and operate as subsidiaries of Classic Dining Group, which is owned by Kilberger; that they share employees, upper management, human resources, payroll services, and

training materials; and that they have a communal website that allows prospective employees to apply to work as servers at any of Classic Dining Group's restaurants according to a uniform job description. (*Id.* at ¶¶ 68–115.) While these allegations may suggest coordination, they do not establish the requisite control that the Seventh Circuit has deemed the touchstone of joint employment. *Moldenhauer*, 536 F.3d at 644 ("[F]or a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee . . . ."). Notably, the assertion that the Restaurant Entities share employees between restaurant locations remains unchanged from the original complaint. In its first order, the Court found this allegation insufficient to establish the control necessary for a joint-employer relationship because it did not allege that the Plaintiffs *in this case* worked at multiple restaurant locations. The second amended complaint suffers from the same flaw.

Other courts have declined to find joint employment in similar situations. *See, e.g.*, *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1128–32 (N.D. Ill. 2017) (allegations that parent company and subsidiaries applied the same employment policies to employees at all restaurants, permitted employees to transfer between locations, and shared office space, a website, and human resources staff did not support finding that subsidiary was a joint employer of other subsidiary's employees); *id.* at 1130 ("Cooperation between affiliates does not imply control. That the defendants shared a payroll service, for example, does not suggest that [one subsidiary] pays the employees of [the other subsidiary], or vice versa."); *Crumbling*

*v. Miyabi Murrells Inlet, LLC*, 192 F. Supp. 3d 640, 646–47 (D.S.C. 2016) (allegations that restaurants shared common business purpose and were advertised on parent company's website insufficient to show joint employment when restaurants did not have authority to hire and fire employees of other restaurants or determine their work schedules or payment).

Finally, filing the complaint as a collective action does not relieve Plaintiffs of their obligation to establish that each Plaintiff has standing to sue each Defendant. *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016) (dismissing claims against defendants who did not employ plaintiffs for lack of standing in FLSA collective action); *Lucas v. BMS Enters., Inc.*, No. 3:09-CV-2159, 2010 WL 2671305, at *2–3 n.8 (N.D. Tex. July 1, 2010) (citation omitted) ("To demonstrate that they have standing, named plaintiffs in a class action suit must meet every element of standing as to each defendant, including alleging that they were injured by each defendant named in the suit . . . The standing requirement is no different in a[n FLSA] collective action suit.").

In conclusion, Plaintiffs have not met their burden of establishing standing as to each Restaurant Entity.  Specifically, Plaintiffs Amos, Johnson, and Lanpher have established standing only as to Classic Dining Kentucky Ave, Inc.; the same is true for Plaintiff Looper with regards to Classic Dining of Daleville, LLC; Pettingill with Classic Dining of Greenwood, Inc.; and Ross with Classic Dining Post Road, Inc.  If this case is to survive, the Court must pare it down in conformity with Article III.[1]

---

[1] As with the other Defendants, the Restaurant Entities challenge Plaintiffs' standing on both facial and factual grounds.  (Rest. Entities' Mem. 2, ECF No. 151.)  However, the Court understands the

b.  Classic Dining Group

Plaintiffs also allege that they have standing to sue Classic Dining Group, the parent company of the twenty-nine Denny's locations owned by Kilberger, because it was their joint employer.  However, Plaintiffs have failed to show that Classic Dining Group "exercise[d] control over the[ir] working conditions." *Moldenhauer*, 536 F.3d at 644.

First, the Court disregards the conclusory allegations that Classic Dining Group was Plaintiffs' "employer" under the FLSA and "had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' and the Collective Members' employment with Defendants."  (Am. Compl. ¶¶ 64–65, ECF No. 149.)  These are merely formulaic recitations of the Department of Labor's guidance on joint-employment considerations and are not entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009).

Further, not only are these allegations not well-pled, but they conflict with Plaintiffs' other, more specific allegations.  Taking Plaintiff Amos as an example, she alleges that it was "Classic Dining Kentucky Avenue, Inc. and Kilberger"—not

---

Restaurant Entities to argue that "Plaintiffs fail to plead that *each* Plaintiff has standing to sue *each* separately incorporated Restaurant Defendant entity."  (*Id.* at 3.)  Nothing in the Entities' memorandums appears to claim that the Plaintiffs lack standing to sue *any* of the Restaurant Entities—for example, that Plaintiff Amos lacks standing to sue Classic Dining Kentucky Ave, Inc.  And with good reason: it is clear that both the Restaurant Entities' facial and factual challenge would fail as it pertains to the Restaurant Entity at which each Plaintiff worked.  Therefore, the Court addresses the challenge only with regards to the Restaurant Entities at which each Plaintiff did not work.

Classic Dining Group—that hired her and "unilaterally" determined her rate of pay and work schedule, trained her, maintained her time and compensation records, and set and controlled her conditions of employment.  (Am. Compl. ¶¶ 15–16, ECF No. 149.)  Apart from the conclusory recitations, Plaintiffs do not allege that Classic Dining Group exercised control over their working conditions.

Rather, Plaintiffs largely rely on the same allegations of coordination among the Restaurant Entities, Kilberger, and Classic Dining Group, along with the fact that Classic Dining Group is the parent company of the Restaurant Entities.  But the focus is on the "economic reality" of the relationship between the alleged employer and employee—not the "technical label" that Classic Dining Group is the holding group or parent company of the Restaurant Entities.  *See Berger*, 843 F.3d at 290 (quoting *Vanskike v. Peters*, 974 F.2d 806, 808 (7th Cir. 1992)).  And the economic reality shows that Classic Dining Group did not exercise control over Plaintiffs' working conditions.  Coordination alone is not enough.  Advertising all of Classic Dining Group's restaurants on the same website and allowing prospective employees to apply for jobs at any location does not mean that Classic Dining Group dictated those employees' schedules, working conditions, or payment once they were on the job.  Without allegations of this sort, the Court cannot conclude that Classic Dining Group was a joint employer.  *See, e.g.*, *Sampson v. MediSys Health Network, Inc.*, No. 10-CV-1342, 2012 WL 3027838, at *4 (E.D.N.Y. July 24, 2012) (allegations that parent company had systemwide policies and employee benefit plans and centralized management, human resources, and payroll system may show "affiliation among the defendants"

13

but did not show joint employment); *Cavallaro v. UMass Mem'l Health Care, Inc.*, 971 F. Supp. 2d 139, 149 (D. Mass. 2013) (allegations that parent company had centralized human resources and payroll records, along with systemwide policies and employment benefits plans across subsidiaries, were insufficient to show parent company exercised control over plaintiff's employment conditions). Therefore, any injury Plaintiffs' might have is not traceable to or redressable by Classic Dining Group.

    c. Kilberger

Whether Plaintiffs have standing to sue Kilberger, the owner of the Restaurant Entities and Classic Dining Group, is a closer question. To start, Plaintiffs assert that whether Defendants are their employers should be considered a merits question, not a jurisdictional one. Therefore, Plaintiffs argue, the Court should not look outside the pleadings and instead should evaluate Plaintiffs' claims under the Rule 12(b)(6) plausibility standard. (Pls.' Resp. 15–16, ECF No. 156.)

Plaintiffs are incorrect, however. "Standing is an essential component of Article III's case-or-controversy requirement." *Apex Digital*, 572 F.3d at 443 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). And the "irreducible constitutional minimum of standing" consists of three elements: injury in fact, traceability, and redressability. *Lujan*, 504 U.S. at 560–61. Since "[u]nder the FLSA, alleged employees' injuries are only traceable to, and redressable by, those who employed them," *Berger*, 843 F.3d at 289 (quotation marks and citation omitted), whether Plaintiffs were employed by Defendants—and therefore have standing to sue them—

14

necessarily is a jurisdictional issue that the Court must address before it can evaluate Plaintiffs' claims. And parties are free to challenge a court's subject matter jurisdiction—of which standing is a part—on facial or factual grounds. *Apex Digital*, 572 F.3d at 443.

"Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Id.* In assessing a facial challenge, the court does not look beyond the allegations in the complaint, which are taken as true. *Id.* at 444.

In contrast, a factual challenge contends that "'there is *in fact* no subject matter jurisdiction,' even if the pleadings are formally sufficient." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Apex Digital*, 572 F.3d at 444). Under a factual challenge, the court "may properly look beyond the jurisdictional allegations of the complaint," which are not entitled to the presumption of truth, and "view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital*, 572 F.3d at 444 (cleaned up).

Kilberger raises both a facial and factual challenge. (Kilberger Mem. 2, ECF No. 155.) On the facial challenge, Plaintiffs seem to have the better argument. In their complaint, Plaintiffs allege that Kilberger hired them, determined their rate of pay, set their work schedules, trained them, set and controlled their conditions of employment, and maintained their time and compensation records in his role as president and CEO of PFC Classic Dining, the brand name under which the

Restaurant Entities operate. This is likely sufficient to plausibly suggest that Kilberger was their employer.

Notably, however, these allegations are missing from Plaintiffs' declarations, which the Court can consider when evaluating Kilberger's factual challenge. While Crystal Ross never filed a declaration, the other five named Plaintiffs submitted declarations with their most recent motion for conditional certification. (ECF Nos. 165-1, 165-2, 165-3, 165-4, 165-5.)[2] Not one Plaintiff asserts that Kilberger hired her, trained her, determined her compensation, set her schedule, or instructed her to perform the tasks that comprise the basis of Plaintiffs' complaint. In fact, three of the five declarations make no reference to Kilberger whatsoever. (ECF Nos. 165-1, 165-2, 165-3.) Plaintiff Lanpher stated that he was aware that his Denny's was owned by someone named Ken, that Ken was in charge of all the locations in the chain, and that everything should be done by the book when Ken was in town. (ECF No. 165-4 at 5.) Plaintiff Looper said the same thing and that as a result, she "understood that Ken was [her] boss and that he could fire [her] or make decisions regarding [her] employment at any time." (ECF No. 165-5 at 4.)

---

[2] Plaintiffs contend that "[r]elying on the Declarations cited by Defendants would be particularly inappropriate here, as those Declarations were submitted in support and in opposition to Plaintiffs' Motion for Conditional Certification which was mooted by the Court's order of dismissal." (ECF No. 156 at 16.) It is unclear how dismissal of the motion mooted the veracity of declarations. Anyway, the Court did not rely on the declarations cited by Defendants. Instead, the Court looked to the declarations that were submitted in support of the motion for conditional certification currently before the Court. This is entirely fair and proper. "When a party moves for dismissal under Rule 12(b)(1) challenging the factual basis for jurisdiction, the nonmoving party must support its allegations with competent proof of jurisdictional facts." *Brunner v. Liautaud*, No. 14 C 5509, 2015 WL 1598106, at *3 (N.D. Ill. Apr. 8, 2015). Moreover, Plaintiffs filed the present motion for conditional certification, and the accompanying declarations, *after* Kilberger filed the motion to dismiss that mounted a factual challenge. In short, it is Plaintiffs' burden to establish jurisdiction, and they had notice that they would have to do so. In no sense can it be considered unfair for the Court to look beyond the complaint for proof of jurisdiction.

16

These assertions are insufficient to establish that Kilberger was Plaintiffs' employer, particularly in light of Kilberger's declaration, which Plaintiffs do not contradict. Kilberger declares that he primarily oversees the high-level operations of the business: obtaining business licenses, negotiating leases, and managing finances. (ECF No. 166-1 at 1.) He states that he does not have day-to-day operational oversight of the restaurants; rather, it is the general manager of each restaurant— who Kilberger does not even hire—who hires servers, sets employee schedules, assigns work duties, and determines the wages and terms and conditions of servers' employment. While Kilberger has access to each restaurant's documents and records, he does not hire, fire, or discipline servers; does not regularly visit the restaurants; and does not recall even meeting any of the Plaintiffs. (*Id.* at 2.)

On these facts, Kilberger cannot be deemed Plaintiffs' employer. Even considering Plaintiffs' argument that the "overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation," (Pls.' Resp. 16, ECF No. 156 (quoting *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991)), it remains that liability is appropriate when the corporate officer *has operational control*. In *Dole*, for example, the Sixth Circuit noted that not only was the defendant the company's chief corporate officer, but he "had control over significant aspects of the corporation's day-to-day functions, including determining employee salaries." *Dole*, 942 F.2d at 966. In contrast, Kilberger did not have control over significant aspects of the restaurants'

17

day-to-day functions, nor did he determine the Plaintiffs' compensation, which was set at the local restaurant level by the general managers. (ECF No. 166-1 at 3.)

The statements within the declarations that would suggest operational control over the alleged FLSA violations—that Plaintiffs were required to reimburse "management" for customer walkouts or that "[d]efendants" delegated side work to Plaintiffs that prevented them from earning a tip—still refer generally to "defendants" or "management" and do not identify Kilberger as the perpetrator. (ECF No. 165-1 at 3–5.) "[F]or a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee . . . ." *Moldenhauer*, 536 F.3d at 644. The declarations make clear that Kilberger did not exercise this control. Therefore, Plaintiffs do not have standing to sue him.

### d. Summary

In sum, only the Restaurant Entity at which each Plaintiff worked can be deemed that Plaintiff's employer. Accordingly, Plaintiffs Amos, Johnson, and Lanpher have standing to sue Classic Dining Kentucky Ave, Inc.; Plaintiff Looper has standing to sue Classic Dining of Daleville, LLC; Plaintiff Ross has standing to sue Classic Dining Post Road, Inc.; and Plaintiff Pettingill has standing to sue Classic Dining of Greenwood, Inc. The Court will only consider these surviving Defendants when evaluating whether Plaintiffs have stated a claim that withstands Defendants' motion to dismiss under Rule 12(b)(6).

### B. (12)(b)(6) Failure to State a Claim

The FLSA requires employers to pay covered employees a minimum wage—currently, $7.25 an hour. 29 U.S.C. § 206(a)(1)(C). But when it comes to employees who regularly receive tips, employers can pay just $2.13 an hour and allow tips to make up the $5.12 difference. 29 U.S.C. § 203(m)(2). In the event the tips do not make up the difference, however, the employer must do so.

But there are a few situations in which the employer cannot pay only the $2.13 and allow tips to make up the difference—referred to as "taking a tip credit"—and must pay the full minimum wage instead. Three are relevant here.

First, the employer cannot take the tip credit if the employee does not retain all of the tips she receives—for example, if the employer were to keep some of the employee's tips for itself. 29 U.S.C. § 203(m)(2). Second, the employer cannot take the tip credit for the time employees spend performing duties that are *unrelated* to their tipped duties. Third, the employer cannot take the tip credit for the time employees spend performing duties that are *related* to their tipped duties, if the employees spend more than twenty percent of their workweek performing those duties. *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1076 (7th Cir. 2014) ("A tipped employee is entitled just to the sub-minimum, tip credit wage rate unless he is doing either unrelated non-tipped work or related non-tipped work in excess of 20 percent of his work-day.").[3]

---

[3] In their materials related to Plaintiffs' Motion for Conditional Certification, (ECF No. 164), and Notice of Supplemental Authority, (ECF No. 173), the parties debate the significance of the Department of Labor's recent actions regarding the "80/20 rule" and the definition of related and unrelated duties. (ECF No. 167 at 16–17; ECF No. 168 at 2–3.) To the extent these changes impact the Motion for Conditional Certification, they are irrelevant, as that motion is denied herein below as moot. Relatedly, to the extent they might impact Plaintiffs' ability to state a claim for purposes of Defendants' motion to dismiss, there is no indication—and Defendants do not attempt to argue—that

Plaintiffs allege that Defendants violated the FLSA by taking the tip credit in all three of those situations. Defendants moved to dismiss, contending that Plaintiffs failed to state a claim because Plaintiffs (1) fail to establish that they are covered by the FLSA, (2) fail to properly allege a minimum wage violation, and (3) fail to show that any violations by Defendants were willful.

1. <u>Legal Standard</u>

To survive a motion to dismiss, a complaint must contain a short and plain statement showing that the pleader is entitled to relief. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "To meet this standard, a plaintiff is not required to include 'detailed factual allegations,'" but the factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss for failure to state a claim, courts "take all the factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, and draw all reasonable inferences in the plaintiff's favor, *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Courts, however, need not accept the truth of mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

the more recent guidance would apply retroactively and defeat any remaining claims the Plaintiffs would have against the Restaurant Entities. In other words, whether or not the Court uses the Occupational Information Network's list of duties as guidance for what is related or unrelated, and whether the Court applies the "80/20 rule" or the "reasonable time" standard, the outcome would be the same for purposes of this Order.

2. <u>FLSA Coverage</u>

To state a claim under the FLSA, Plaintiffs must first show that they are covered by it. As discussed previously, an employee can allege that she is covered because she personally is "engaged in commerce or in the production of goods for commerce" (individual coverage) or because she is "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. § 206(a). Defendants argue that Plaintiffs have not established either.

The Court agrees with Defendants as to individual coverage. To be "engaged in commerce," an employee's work must be "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955). Plaintiffs' responsibilities as servers are insufficient to meet this standard. *See, e.g.*, *Martinez v. Manolos Tamales, Inc.*, No 14 C 9686, 2015 WL 5144024, at *2 (N.D. Ill. Aug. 31, 2015) (cooking and cleaning at restaurant insufficient to plead individual FLSA coverage); *Martin v. Briceno*, No. 11-23228-CIV, 2014 WL 2587484, at *3–4 (S.D. Fla. June 10, 2014) (servers, cooks, and bartenders are not engaged in commerce or in the production of goods for commerce). Nor do Plaintiffs allege that they "engaged in . . . the production of goods for [interstate] commerce." Therefore, they have failed to establish individual coverage.

Plaintiffs have established enterprise coverage, however. Under their theory that the Defendants operate as a single enterprise, they must allege first that Defendants perform related activities, through unified operation or common control, for a

21

common business purpose. 29 U.S.C. § 203(r)(1). They have done so. They allege that Defendants operate a chain of Denny's restaurants, in a largely identical manner, under a common brand name that shares a website advertising all of the locations; that employees occasionally work at more than one restaurant location and the same district managers oversee multiple locations; that the restaurants all share a human resources manager, payroll services, and employee training materials; and that all the locations are owned by Kilberger and his holding company, Classic Dining Group, and that it was Kilberger who made the decision to claim the tip credit that forms the basis of the alleged minimum wage violations. This is sufficient to allege that Defendants engaged in related activities, under the common control of Kilberger, for the common business purpose of operating a chain of Denny's for the profit of Kilberger and Classic Dining Group. *See, e.g.*, *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 970 (5th Cir. 1984) (citing facts that individually incorporated hotels operated in similar manner under common brand name and direction of one owner, among other things, as evidence of single enterprise, despite day-to-day management of hotels by different managers).

Next, Plaintiffs must allege that the enterprise "engaged in commerce or in the production of goods for commerce" by showing either that the enterprise (a) has employees engaged in commerce or in the production of goods for commerce, or (b) has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person. 29 U.S.C. § 203(s)(1). Plaintiffs satisfy the latter option by alleging that they wash and cut fruit; prepare

22

salads, desserts, pancakes, and other food items; perform cleaning duties; and engage in other activities that involve goods or materials that have been moved in or produced for commerce. *See, e.g.*, *Martinez*, 2015 WL 5144024, at *2 (finding it is plausible that in the course of cooking and cleaning at restaurants, plaintiff handled goods that had moved in interstate commerce).

Finally, the enterprise must have annual gross sales of at least $500,000, which the Plaintiffs here allege. (Am. Compl. ¶ 120, ECF No. 149.) The Restaurant Entities' argument that Plaintiffs fail to establish that any of the Restaurant Entities have gross annual sales of at least $500,000 is meritless. (Rest. Entities' Mem. 15, ECF No. 151.) Plaintiffs are free to allege that the enterprise as a whole exceeds that threshold, and the Restaurant Entities need not be considered joint employers for Plaintiffs to do so. *See, e.g.*, *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 648–50, (N.D. Ill. 2007) (restaurants constituted single enterprise that met $500,000 requirement despite not being joint employers for majority of plaintiff's employment). Therefore, Plaintiffs have sufficiently alleged that they are covered by the FLSA.

3. <u>Related and Unrelated Duties</u>

Plaintiffs assert that Defendants violated the FLSA by paying the tip credit wage for two different categories of Plaintiffs' time: time spent completing non-tipped work that was unrelated to their tipped occupation as servers, and time spent completing non-tipped work that was related but that accounted for more than twenty percent of the workweek. (Am. Compl. ¶¶ 5–6, ECF No. 149.) In support, Plaintiffs supply a long list of the unrelated duties they were required to perform, including working the

grill line, taking out trash, scrubbing walls, doing deep cleaning, acting as dishwashers, preparing delivery and takeout orders, cutting fruit, and preparing various foods, among other tasks. (*Id.* at ¶¶ 125, 137.) Similarly, they provide examples of some of the related duties they performed, including cleaning and setting tables, toasting bread, making coffee, and washing dishes and glasses. (*Id.* at ¶ 127.) They allege that these tasks comprised between thirty and ninety percent of their working hours each and every workweek. (*Id.* at ¶¶ 130, 139, 152.) Each Plaintiff also estimates the amount of time she personally spent doing this work before, after, and while serving customers. (*Id.* at ¶¶ 131–36.)

Defendants first contend that Plaintiffs cannot state a claim without pointing to an instance that their hourly wage, averaged across the workweek, fell below the minimum wage. (Rest. Entities' Mem. 16, ECF No. 151.) But as other courts have recognized, "the question is not whether the employee's average hourly rate is equal to or exceeds full minimum wage; rather, the question is whether the employer is entitled to take the tip credit" in the first place. *Stokes v. Wings Inv., LLC,* 213 F. Supp. 3d 1097, 1102 (S.D. Ind. 2016) (quoting *Knox v. Jones Grp.*, 201 F. Supp. 3d 951, 955 n.3 (S.D. Ind. 2016)). And this makes sense. A hotel could not pay its maintenance worker $2.13 for the 36 hours he did maintenance tasks—non-tipped, unrelated work—as long as he picked up a big enough tip in his shift behind the hotel bar to end up above the required $7.25. Nor could it require a server in the hotel restaurant to bus tables and make coffee—non-tipped, related work—for eighty percent of his week at the $2.13 rate, as long as he makes enough tips in the other

24

twenty for his paycheck to even out to $7.25 an hour. A pleading states a minimum wage violation when it plausibly alleges that a tipped employee also performed non-tipped, unrelated work, or performed non-tipped, related work for more than twenty percent of the workweek, and the employer took the tip credit for those hours—regardless of the ultimate hourly wage averaged across the workweek. *Hart v. Crab Addison, Inc.*, No. 13-CV-6458, 2014 WL 5465480, at *5 (W.D.N.Y. Oct. 27, 2014); *Stokes*, 213 F. Supp. 3d at 1103. That is what Plaintiffs have alleged here.

Defendants' remaining argument is that Plaintiffs' allegations are conclusory and lack specifics. The Supreme Court addressed a similar argument in *Erickson v. Pardus*, where it reviewed the Tenth Circuit's finding that a complaint's allegations were "too conclusory." The Court reiterated that "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

Plaintiffs' allegations provide Defendants with fair notice of their claim. Plaintiffs alleged that they worked as tipped employees and were always paid at the tip credit wage; stated that they performed related, untipped duties for more than twenty percent of their workweek as well as unrelated, untipped duties; estimated that thirty to ninety percent of their time was spent doing these tasks; provided a lengthy list of these tasks; ballparked how much time they spent doing these tasks during the

beginning, middle, and end of their shifts; and indicated the frequency of the alleged wage violations—every week. These allegations are indistinguishable from those in other cases that were found to have stated a claim, and they are sufficient. *See Stokes,* 213 F. Supp. 3d at 1103–04; *Knox*, 201 F. Supp. 3d at 957–61. Down the line, a court or jury may need to determine exactly which duties were related and which were unrelated, and exactly how much time Plaintiffs spent on each. And of course, the precise amount of unpaid wages will need to be calculated if damages are to be awarded. But Defendants' contention that those specifics are required at this stage is misplaced. A plausible claim to relief is all that is required to survive a motion to dismiss, and that is what Plaintiffs have alleged.

4.  Tip Retention

Recall that an employer is not permitted to take the tip credit if the employee does not retain all of the tips she receives. 29 U.S.C. § 203(m)(2). Plaintiffs allege that they were always paid the tip credit wage of $2.13. (Am. Compl. ¶ 126, ECF No. 149.) In support of their tip retention claim, they allege that Defendants "engaged in the regular policy and practice" of requiring Plaintiffs and the Collective Members to "reimburse Defendants for cash shortages, customer walkouts, food spoilage and breakage." (*Id*. at ¶¶ 139, 143.) The complaint then provides two examples related to Plaintiff Amos's employment. In one instance, Amos was required to pay the Defendants $17 from her tips when her cash drawer was short that amount; in another, she split the difference with Defendants when her cash drawer was short

$10.  (*Id.* at ¶ 141.)  This states a plausible claim that Defendants violated the FLSA by paying the tip credit wage while confiscating some of Plaintiffs' tips.

### 5. Willfulness

Finally, Plaintiffs allege that Defendants' violations were willful.  (*Id.* at ¶ 147.) Willful violations of the FLSA provide plaintiffs with an important benefit: an extension of the statute of limitations from two to three years, allowing plaintiffs the possibility of recovering an additional year of damages.  29 U.S.C. § 255(a). Willfulness is also relevant to whether an employer can establish that it acted in good faith and, as a result, avoid paying liquidated damages.  29 U.S.C. § 260.

Here, Plaintiffs allege that Defendants knew of the FLSA's minimum wage requirements and knew that, or acted with reckless disregard as to whether, their failure to pay Plaintiffs the full minimum wage would violate the FLSA.  (Am. Compl. ¶¶ 136, 140, 146.)  Defendants are correct that this allegation is conclusory—it simply recites the meaning of "willfulness" as defined by the Supreme Court.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  And Federal Rule of Civil Procedure 9(b) does not give Plaintiffs a free pass to allege legal conclusions when it comes to Defendants' state of mind.  *See, e.g.*, *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (dismissing argument that Rule 9(b) allows a plaintiff to plead general allegations of willfulness under the FLSA and holding instead that a plaintiff must allege facts that would permit a plausible inference of willfulness).  But Plaintiffs are still entitled to have all reasonable inferences drawn in their favor, *Roberts*, 817 F.3d

27

at 564, and need only state a claim to relief that is plausible on its face, *Twombly*, 550 U.S. at 570.

They have done so. Plaintiffs allege that every week, they spent a minimum of thirty percent and a maximum of ninety percent of their time doing work that did not produce tips, often in the back of the restaurant. (Am. Compl. ¶¶ 125, 130, 137.) Defendants knew that during these times—as always—Plaintiffs were still being paid at the tip credit rate of $2.13 an hour. (*Id.* at ¶ 126.) It is a reasonable inference that Defendants knew or acted with reckless disregard that it would violate the FLSA to pay Plaintiffs this rate when, at times, Plaintiffs were spending nearly all of their working hours performing duties that did not even involve customer interaction, let alone the opportunity to earn a tip.

And Plaintiffs make these allegations against a backdrop that suggests this practice was how Defendants turned a profit. Plaintiffs allege that the "company-wide decision to require servers" to "perform the amounts and types of non-tipped labor alleged" at the tip credit rate, "in lieu of staffing full minimum wage employees," was made "to reduce labor costs and maximize profits" as part of the business model of "a restaurant business that specializes in breakfast foods and does not sell alcohol." (Am. Compl. ¶¶ 104, 80.) It may turn out that Plaintiffs will not be able to provide competent evidence that Defendants' violations were willful at the summary judgment stage or at trial. But at this stage, "the Court must be cognizant that those engaged in knowing violations of the law seldom announce that fact and that it is not the Court's role to act as factfinder." *Galloway v. Chugach Gov't Servs., Inc.*, 199 F.

Supp. 3d 145, 152 (D.D.C. 2016). Plaintiffs need only allege facts that plausibly suggest Defendants acted willfully. They have met that threshold.

### C. *Plaintiffs' Motion for Conditional Certification and Defendants' Motion to Strike or for Leave to File a Response*

Plaintiffs filed a motion for conditional certification and seek to notify "[a]ll individuals who worked at any time during the past three years at any Denny's restaurant owned or operated by Defendants" of their rights to join a collective action. (Am. Compl. ¶ 146, ECF No. 149.) However, as the foregoing analysis illustrates, each Plaintiff only has standing to sue the Restaurant Entity at which she worked. This necessarily implicates Plaintiffs' proposed conditional certification and their arguments that there are other similarly situated employees who want to join the action and who were subjected to a common policy. Therefore, Plaintiffs' motion for conditional certification, (ECF No. 164), is denied as moot.

It follows that Defendants' motion to strike, or in the alternative, motion for leave to file a response to, the notice of supplemental authority Plaintiffs filed in support of their motion for conditional certification, (ECF No. 174), is similarly denied as moot.

### Conclusion

Classic Dining Group's Motion to Dismiss, (ECF No. 152), is **granted**; Kilberger's Motion to Dismiss, (ECF No. 154), is **granted**; and the Restaurant Entities' Motion to Dismiss, (ECF No. 150), is **granted in part and denied in part**. Plaintiffs' claims against Classic Dining Group and Kilberger will be dismissed with prejudice for lack of subject matter jurisdiction. Each Plaintiff's claims against the Restaurant

Entities for which she did not work will be dismissed with prejudice for lack of subject matter jurisdiction. Plaintiffs' remaining claims against the Restaurant Entities shall be severed and proceed in separate actions as follows:

(1) Plaintiffs Amos, Johnson, and Lanpher, on behalf of themselves and all other persons similarly situated, known and unknown, will **proceed** in this action. The defendant will be Classic Dining Kentucky Ave, Inc.

(2) The clerk is **directed** to open three new actions in the Indianapolis Division:

   a. In the first, the plaintiff will be Plaintiff Looper, on behalf of herself and all other persons similarly situated, known and unknown. The defendant will be Classic Dining of Daleville, LLC.

   b. In the second, the plaintiff will be Plaintiff Ross, on behalf of herself and all other persons similarly situated, known and unknown. The defendant will be Classic Dining Post Road, Inc.

   c. In the third, the plaintiff will be Plaintiff Pettingill, on behalf of himself and all other persons similarly situated, known and unknown. The defendant will be Classic Dining of Greenwood, Inc.

(3) The Nature of Suit for each newly opened action will be 710. The Cause of Action will be 29:201.

(4) Copies of this Entry and the operative complaint, (ECF No. 149), will be docketed in the newly opened actions. The original complaint, (ECF No. 1),

30

will also be docketed for the purpose of assessing the statute of limitations and calculating damages, if necessary.

    a. The appearance for Renee L. Koehler, (ECF No. 35), and Stephanie M.G. Dinkel, (ECF No. 54), on behalf of Classic Dining of Daleville, LLC, will be docketed in the new action with Plaintiff Looper.

    b. The appearance for Renee L. Koehler, (ECF No. 44), and Stephanie M.G. Dinkel, (ECF No. 63), on behalf of Classic Dining Post Road, Inc., will be docketed in the new action with Plaintiff Ross.

    c. The appearance for Renee L. Koehler, (ECF No. 37), and Stephanie M.G. Dinkel, (ECF No. 56), on behalf of Classic Dining of Greenwood, Inc., will be docketed in the new action with Plaintiff Pettingill.

    d. The clerk will enter James L. Simon and Clifford P. Bendau, II as attorneys of record in the newly opened actions. If Counsel does not intend to represent the Plaintiffs in these matters, Counsel should file a motion to withdraw no later than September 30, 2021.

Plaintiffs' Motion for Conditional Certification, (ECF No. 164), and Defendants' Motion to Strike, or in the alternative, Motion for Leave to File a Response to Plaintiffs' Notice of Supplemental Authority, (ECF No. 174), are **denied as moot**.

**SO ORDERED.**

Date: 9/22/2021

_(signature)_

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Clifford P. Bendau, II
BENDAU & BENDAU PLLC
cliffordbendau@bendaulaw.com

Stephanie M.G. Dinkel
KOEHLER DINKEL LLC
sdinkel@kdllclaw.com

Renee L. Koehler
KOEHLER & PASSARELLI, LLC
rkoehler@kdllclaw.com

James L. Simon
LAW OFFICES OF SIMON & SIMON
jameslsimonlaw@yahoo.com